Plaintiff herein, a boat builder and repairer, is suing the defendant for the sum of $904.17 for labor and work alleged to have been done on three boats belonging to the defendant, as well as for certain material alleged to have been furnished in connection with the repair work which he did, and also for rental of his ways.
He alleges that during the month of October, 1939, at the request of the defendant, he put in forty hours of work on defendant's gas boat "Chicago", at the rate of .60¢ per hour, and that he also furnished .50¢ worth of nails used in performing that work, making a total amount due him of $24.50. That during the month of November, 1939, he furnished certain material, and also worked 199 hours, at .60¢ per hour on defendant's boat "Indiana", the total amount due him on that job being the sum of $122.25. That during the month of December, 1939, up to and inclusive of August 23, 1940, at defendant's request also, he furnished certain material, his ways, and worked a total of 1,042 hours, at .60¢ per hour on defendant's boat "Superior". The total amount claimed for material furnished, rental of ways and labor on this last boat is $757.42. Annexed to his petition are three sworn itemized statements showing in detail the bills that are alleged to have been paid for material furnished by him, as well as for the number of hours he claims to have worked on each of the three boats.
The defendant filed an exception of vagueness, contending that from the allegations of the petition it was impossible to determine whether plaintiff was suing on a contract or on a quantum meruit, and further, defendant pleaded that if plaintiff intended to sue upon a contract, that the petition was indefinite in that it failed to state whether the contract was written or oral. Further he pleaded that if plaintiff intended to sue upon a quantum meruit, the petition failed to disclose a cause of action because it did not show that the prices charged by plaintiff for his work, rental, and material are just, fair and reasonable.
In answer to the exceptions plaintiff filed a supplemental and amended petition in which he declared that the contract or agreement sued upon was an oral one and he also declared that the prices charged for labor and material and for the rental of his ways are just, fair and reasonable and in accordance with the usual and customary charges made by him for this kind of work.
The defendant then answered denying practically all the allegations of plaintiff's petitions, admitting only that the plaintiff did do certain work on each of the three boats, all amounting to very little. He alleges that he furnished all the material that was necessary for the repair work that was done but denies that the prices charged by plaintiff for his labor and for the use of his ways, are fair, just and reasonable, and avers that they are exorbitant, outrageous and unconscionable. He avers further that no price was agreed upon in advance between them, it being understood that plaintiff would charge the usual price which was $3 per day and that he, defendant, would furnish all material. He further avers that it was also understood between them that in accordance with plaintiff's usual custom, there would be no charge for the use of his ways, the only charge in this connection being a small amount to be paid for pulling the boat up on the ways.
Defendant then sets out in his answer that plaintiff has been fully paid by him for all that is due in connection with the work on the three boats. He sets out in detail the time and the manner in which each payment was made, as well as the amount thereof, the whole aggregating the sum of $210, which he avers was more than was fully due. *Page 542 
Assuming then the position of a plaintiff in reconvention, he alleges that plaintiff, in building the cabin on the boat "Superior", built it so low that it was impossible for a man to stand up in it, and that because of his gross incompetency in this respect, it was necessary for him to have the floor lowered six inches at a cost of $24 which he was obliged to pay and which amount he is entitled to recover.
After trial in the district court covering a period of several days with a transcript of testimony of over 300 pages, there was judgment in favor of the defendant, rejecting plaintiff's claim in full. Defendant's reconventional demand was also rejected. Plaintiff has appealed but the defendant did not answer and as no mention is made whatever of the reconventional demand, we take it that it is no longer at issue in the case.
The trial judge has favored the record with a full, complete and detailed analysis of the testimony. There is absolutely nothing more than a question of fact involved and in our opinion, he correctly concluded that the plaintiff failed to support, by competent evidence, the various and numerous charges which he has made for the work alleged to have been done by him. Naturally when the defendant pleaded payment in full, he admitted, as he already had in his answer, that plaintiff had performed certain services for him, as the plea of payment implies such an admission. The plea of payment, being a special one, the burden of supporting it devolved upon him, and the most serious question in the case is whether or not the judgment appealed from is correct in holding that defendant had borne the burden of proof on this plea. We have carefully considered the testimony in connection with the reasons advanced by the trial judge and have come to the conclusion that he was correct in his findings. At least we are not able to say that he manifestly erred.
From the plaintiff's own testimony it appears that these two parties had been transacting business together for more than forty years. Further, from the defendant's testimony, it would seem that their relations in the past had always been rather cordial and pleasant, even though plaintiff now says that the defendant never has paid him for any work that he did for him. It would seem rather unreasonable for a man to continue to do work for another over such a long period of time without ever having been paid anything at all for his services, unless there was some special relation between them or some unusual circumstances existing, none of which are herein suggested or even intimated.
Another thing which strikes us as being somewhat unreasonable is the plaintiff's attitude with regard to the way he conducts his business. He admits that he has no regular or fixed charge for the work he does, and states that it all depends upon the man for whom he is working. He says that sometimes he charges $1.50, sometimes $3, sometimes $4 or $5 a day, depending upon the character of the individual he is employed by. For a good man he says "he works cheaper" and for a bad man "he works high". When a bad man comes to him for some work he does not tell him in advance what he will charge but waits until the job is finished. His estimate of the defendant is that he is "not such a good man", so the presumption is that he charged "high". Incidentally he names two or three other parties for whom he did some work and against whom he made the same discrimination, one because he "did not treat him so good" and the other, a meat packer of Houma, because, he says, "that man charged too much for his meat." It stands to reason if every tradesman or business man could use such whims and fancies in dealing with his fellow men, it would be impossible to transact any business at all, and it is in this light that the various charges made by this plaintiff against the defendant have to be scrutinized.
We believe that a fair consideration of the testimony shows that the bills of the plaintiff are grossly inflated and were prepared with the idea that he was going to satisfy a whim or desire to get even with this defendant for some grievance, whether real or fancied, which he had against him.
It is unnecessary for us to go into any detail, as did the district judge, about all the items that are charged, especially since we agree with him in the manner in which he concluded on all of them. Plaintiff has certainly not produced any corroborating testimony in support of his charges concerning the nature and the extent of the repair work which he did on each of the boats and on the contrary, the defendant produced testimony which the district judge considered reliable enough to show that the *Page 543 
time which he claims to have put on each job, as well as the charges, are excessive and exorbitant. As far as the material he claims to have furnished is concerned, the defendant produced bills and statements showing that it was all supplied by himself. With regard to the amount of rental of the ways, fifty-three days at $2 per day, the testimony indicates that that is not a usual or customary charge in connection with the business plaintiff is engaged in. It is true that the boat "Superior" occupied the ways for a considerable length of time, but it appears by competent testimony that it was ready to be taken off some two or three weeks, at the most, after it had been placed on them and that plaintiff was instructed to remove it. It is unquestioned that just at that time the defendant took sick and was confined to his bed and home for a period of nearly four months and was unable to personally give his attention to his business and direct that the boat be removed.
Further, in connection with the charges for work done on this boat covering a period of several months, we observed from the various bills and invoices covering all supplies furnished, none of them are dated later than the month of December, 1939, and this, in some measure corroborates the defendant's testimony that the boat was ready to go off the ways about the middle of that month when he became ill.
As already stated, the important question in the case seems to be whether the defendant has supported his plea of payment and whether the amount paid covered all the work that was done for him by the plaintiff. The payments are alleged to have been made in cash and defendant has no receipts to show for them, but in view of the plaintiff's rather odd way of doing business, as already shown, and his further unusual habit, as he himself admits of never giving any customer a receipt, that may appear as a reasonable explanation for the lack of receipts for the various payments claimed to have been made. By far, the greater part of the payments were made not by the defendant himself but through persons he sent with the money and with regard to all of these there is corroborative proof to support them. The witnesses who testified concerning them appear to be reliable men and except for one of them, who is the defendant's son, could have no interest in coming into court and stating something that was not true. The district judge accepted their testimony as being competent and sufficient and certainly we do not know of any reason why it should now be discredited and not believed.
On questions of fact, where there is a conflict of testimony such as in this case, the findings of the trial judge should not be reversed unless found to be manifestly erroneous. No manifest error appears in this instance and therefore it becomes our duty to affirm the judgment appealed from.
Judgment affirmed.